| UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA | JS-6 |

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-02281-JLS-JDE                              Date: June 02, 2021
Title: Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANTS:

Not Present                                        Not Present

**PROCEEDINGS:**   **(IN CHAMBERS) ORDER GRANTING MOTION TO REMAND (Doc. 12)**

Before the Court is Plaintiff's Motion to Remand. (Mot., Doc. 12.) Plaintiff opposed, and Defendant replied.[1] (Opp., Doc. 22; Reply, Doc. 34). For the following reasons, the Court GRANTS Plaintiff's Motion.

**I. BACKGROUND**

This is an employment class action brought by Plaintiff Marlowe Cackin against her former employer Defendant Ingersoll-Rand Industrial U.S., Inc. (Compl., Doc. 1-2.) Plaintiff seeks to represent a class of "[a]ll California citizens currently or formerly employed by Defendants as nonexempt employees in the State of California at any time between May 3, 2016 and the date of class certification[.]" (Compl. ¶ 20.) She also seeks to represent a "Waiting Time Subclass" of all "Class Members who separated their employment with Defendants at any time between May 3, 2017 and the date the class is certified[.]" (*Id.* ¶ 21.)

---

[1] The Court took this matter under submission. (Doc. 37.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-02281-JLS-JDE                                    Date: June 02, 2021
Title: Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

    Plaintiff alleges that Defendant "engaged in a systematic pattern of wage and hour violations" under California law. (*Id.* ¶ 3.) Plaintiff asserts eight claims against Defendant: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to permit rest periods; (5) failure to pay wages due upon separation of employment; (6) failure to provide accurate itemized wage statements; (7) failure to reimburse necessary business expenses; and (8) unfair business practices. (*Id.* ¶¶ 38–102.)

    This case was initially filed in the Superior Court for the State of California, County of Orange on October 28, 2020. (Notice of Removal ("NOR"), Doc. 1 at 2.) On December 3, 2020, Defendant removed the case to this Court under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d). (*Id*. at 3.) On January 4, 2021, Plaintiff moved to remand this case to Orange County Superior Court. (Mot.)

## II.   LEGAL STANDARD

    "[CAFA] vests federal courts with original diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, (2) the proposed class consists of at least 100 class members, (3) the primary defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief, and (4) any class member is a citizen of a state different from any defendant." *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *1 (C.D. Cal. Feb. 5, 2018) (Staton, J.) (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007)); 28 U.S.C. § 1332(d).[2]

    "In determining the amount in controversy [under CAFA], courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently

---

[2] Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-02281-JLS-JDE                                Date: June 02, 2021
Title: Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

made in good faith.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). Where damages are not explicitly pleaded or evident from the face of the complaint, and federal jurisdiction is questioned on that basis, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.* (citing *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013)). As this Court described in *Mortley*, "[a] defendant's preponderance burden 'is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages.'" 2018 WL 708115, at *2 (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)); *and see Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation."). This is in line with the Ninth Circuit's characterization of "amount in controversy" as "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The Ninth Circuit has also held that "CAFA's [amount-in-controversy] requirements are to be tested by consideration of [1] *real evidence* and [2] *the reality of what is at stake in the litigation*, using [3] *reasonable assumptions* underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added).

### III.  **DISCUSSION**

Plaintiff argues that remand is proper because Defendant has failed to establish the amount in controversy under CAFA by a preponderance of the evidence. (Mot. at 4.) Defendant contends that its estimate of $10,562,950.95 in controversy is supported by competent evidence and is based on Plaintiff's "sweeping allegations of a 'systemic pattern' of Labor Code Violations." (Opp. at 5–7.) As evidence, Defendant proffers the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02281-JLS-JDE                              Date: June 02, 2021
Title:  Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

declaration of Laura Price, a Human Resources Business Partner.  (Price Decl., NOR Ex. 1, Doc. 1-1.)  Price states that over the entire class period, Defendant employed at least 220 non-exempt employees in California who worked an aggregate of 27,577 workweeks.  (*Id.* ¶¶ 4–9.)  Price also identifies the average number of non-exempt employees, their average hourly rate, and the number of workweeks for each year during the class period.  In a supplemental declaration, Price further stated that "Defendant has a policy and practice of scheduling its non-exempt employees in California to work on-the-clock for at least eight (8) hours per shift, and forty (40) hours per week."  (Supp. Price Decl. ¶ 11, Doc. 22-1.)

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the $5,000,001 amount-in-controversy figure CAFA requires."  *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019).  Here, Defendant estimates a 40% or twice-per-week violation rate for meal periods, and a 100% or five-per-week violation rate for rest breaks (along with other assumptions for Plaintiffs' remaining claims.)  Defendant argues that these violation rates are supported by the Price declaration and the broad language in Plaintiff's complaint.  The Court, however, has reconsidered its approach to the calculation of violation rates*,* and concludes that neither the Complaint language nor the Price declaration gets Defendant over the $5 million hurdle.

Here, the parties' analysis of the rest break claim highlights the shortcomings of determining a "reasonable" violation rate based solely on vague complaint language and assumptions.  First, Defendant hinges its 100% violation rate assumption on the allegation in Plaintiff's Complaint stating, "During the relevant time period, Plaintiff and Class members . . . were required to work through their *daily* rest periods, were not permitted to take timely rest periods, and/or were not authorized to take their rest periods."  (Opp. at 11, citing Compl. ¶ 68 (emphasis added).)  Defendant argues that Plaintiff explicitly alleges that class members "were not permitted to take compliant rest periods daily," supporting a 100% violation rate.  (Opp. at 11–12.)  Based on this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-02281-JLS-JDE Date: June 02, 2021
Title: Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

violation rate and the data in the Price declaration, Defendant estimates an amount in controversy of $3,864,338.70 for the rest break claim.

The Court disagrees with Defendant's reading of Plaintiff's Complaint. Plaintiff's Complaint refers to "daily rest periods"; the word "daily" immediately precedes and modifies "rest periods," likely referring to the Labor Code requirement that all employees shall be permitted to take rest periods "based on the total hours worked *daily*[.]" (*See* Compl. ¶¶ 67–68.) In its briefing, Defendant subtly changes the placement of the word "daily" so that it modifies the entire sentence—arguing that Plaintiff's complaint alleges that "class members were not permitted to take compliant rest periods daily." (Opp. at 11–12, emphasis added.) This reading is unsupported by the language in the Complaint. The Court therefore concludes that Defendant cannot reasonably rely on a 100% rest break violation rate assumption based solely on the Complaint's reference to daily rest periods.

Defendant then argues that even if the Court declines to impose a 100% violation rate for missed rest breaks, it should impose a violation rate of 40%, which would place $1,545,735.48 in controversy for the rest break claim. (*Id.* at 13 n.6.) Defendant uses this same 40% violation rate to calculate the amount in controversy for the meal period claim, which Defendant estimates at $3,864,338.70. (*Id.* at 9.)

It is important to note that Defendant's only actual evidence is a declaration that provides an estimate of the *total* wages and hours worked of all putative class members during the relevant period. Nothing in the declaration purports to provide evidence that would assist the Court in making a reasonable assumption as to the applicable *violation rate*. Instead, Defendant relies upon the Complaint's allegation that Defendant "engaged in a systemic pattern of wage and hour violations." Defendant then translates the "systemic pattern" language into a 40%—or twice per week—violation rate, an estimate Defendant labels as "conservative." (Opp. at 8.)

Defendant clearly based its 40% violation rate on a figure this Court previously found to be reasonable based on allegations of "systemic" violations. (*See* Opp. at 10, citing *Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-02281-JLS-JDE                      Date: June 02, 2021
Title: Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

708115, at *4 (C.D. Cal. Feb. 5, 2018)). The Court has concluded, however, that its past approach to determining whether the $5 million CAFA threshold has been met—including the one used in *Mortley*— leaves something to be desired. Namely, that approach allowed a defendant to translate vague "pattern and practice" language in a complaint into a purportedly reasonable violation level without providing any evidence at all.

By way of example, in her papers, Plaintiff concedes that a violation rate of 20%, or once every five days, may be reasonable for these claims—an estimate that conveniently places the amount-in-controversy *just* below the $5 million threshold.[3] (Reply at 10, calculating an amount-in-controversy of $4,933,386.23.) On the other hand, in a recent decision, this Court concluded that, where the plaintiff's complaint provided no limiting principle and the plaintiff proffered no rebuttal evidence, it was reasonable for the defendant to assume a 25% meal and rest break violation rate without proffering more evidence (other than a declaration attesting to the number of putative class members, workweeks, and average hourly rate.) *See Mariscal v. Arizona Tile*, No. 8:20-cv-02071-JLS-KES, Doc. 27, at 4–5 (C.D. Cal. Apr. 14, 2021) (Staton, J.). If the Court were to apply a violation rate of 25% (or once every four days) to Plaintiff's two claims, and accept Defendant's remaining assumptions, the amount-in-controversy would cross the $5 million threshold—again, just barely.

Having now engaged in this endeavor on multiple occasions, the Court has become convinced that this approach—which amounts to little more than plucking a violation rate out of the air and calling it "reasonable"—is "a wasteful and silly, but routine, exercise in mathematical fantasyland." *Toribio*, 2019 WL 4254935, at *3. If one is going to assume a violation rate based on nothing more than language in a complaint

---

[3] Plaintiff's estimate excludes the duplicative estimate for minimum wage claims. Because both the overtime and minimum wage claims are based on the allegation that class members were forced to work off-the-clock, the Court agrees with Plaintiff that the inclusion of both estimates is duplicative. (*See* Reply at 9.) Plaintiff, however, includes the higher overtime claim estimate. (*Id.* at 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02281-JLS-JDE                                    Date: June 02, 2021
Title:  Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

referencing a "pattern and practice," then there is no basis for suggesting that a violation rate of 25% is any more or less reasonable than a violation rate of once per week or once per month. *See Vanegas v. DHL Express (USA), Inc*., No. CV 21-01538 PA (JCX), 2021 WL 1139743, at *3 (C.D. Cal. Mar. 24, 2021).  The alternative calculations provided by the parties do "not take the place of evidence"; rather, they "merely demonstrate how arbitrary [Defendant's] assumptions are: [it] show[s] how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold."  *Id.* (citing *Lacasse v. USANA Health Scis., Inc*., No. 2:20-CV-01186-KJM-AC, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021)).  The Court agrees with the observation of the Honorable George Wu:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

*See Toribio*, 2019 WL 4254935, at *3.

Ultimately, it is Defendant's burden to demonstrate a sufficient amount-in-controversy by a preponderance of the evidence, and Defendant has failed to carry that burden.  *See id.* at *4.  Moreover, the Court denies Defendant's request for "a short continuance in order to conduct discovery specific to the amount in controversy." (Opp. at 24, citing *Gibson v. Chrysler Corp*., 261 F.3d 927, 948 (9th Cir. 2001).)  The Court may, in its discretion, allow jurisdictional discovery prior to remanding, but such discovery is not required.  *Abrego Abrego v. The Dow Chem. Co*., 443 F.3d 676, 691 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-02281-JLS-JDE                              Date: June 02, 2021
Title: Marlowe Cackin v. Ingersoll-Rand Industrial U.S., Inc.

Cir. 2006). While the time limits imposed by the general removal provisions of 28 U.S.C. § 1446 may sometimes counsel in favor of pre-remand jurisdictional discovery, "[t]his concern does not plague [the Court] here, as the parties in this case will not be prejudiced in their opportunity to develop the record with regard to the amount in controversy by return to state court. Under CAFA, class actions and mass actions may be removed at any point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable." *Id.*

       Accordingly, Plaintiff's Motion is GRANTED.

## IV.    **CONCLUSION**

       For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. This action is hereby REMANDED to the Superior Court of California, County of Orange, originally commenced as Case No. 30-2020-01167485-CU-OE-CXC.

                                                                            Initials of Deputy Clerk: mku